Filed 4/24/25  P. v. Boyd CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B334808 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA427109) |
| v. | |
| AHJEEB JAMAL BOYD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court found appellant Ahjeeb Boyd ineligible for resentencing under Penal Code section 1172.6[1] at the prima facie stage after concluding that the record of conviction established appellant was the actual killer. Appellant contends that nothing in the record of conviction dispositively establishes he was the actual killer.  He asserts that the felony murder instruction the jury received allowed it to convict him of first degree murder without finding he was the actual killer. We affirm but remand to allow appellant an opportunity to file an amended petition, in accordance with *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*).

## BACKGROUND

### I. Underlying Crimes[2]

In the early morning hours of September 29, 1991, firefighters responded to a call about a car fully engulfed in flames.  After the fire was extinguished, the naked body of a young woman was found inside, burned beyond recognition.  She was covered in a blood-stained white t-shirt, and there was a

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The underlying facts are discussed in detail in this court's prior nonpublished opinion, *People v. Boyd* (Oct. 7, 2019, B288876).  We briefly summarize them here to provide context for the trial court's ruling.  We otherwise do not rely on this factual background in resolving the issues presented in this appeal.  (See § 1172.6, subd. (d)(3).)

2

burned matchbook between her legs.  The woman ultimately was identified through dental records as Jill S.

An autopsy revealed contusions on Jill's left arm and an extensive subdural hematoma on top of her head. Swabs were taken from her vagina and rectum.  There was no soot in Jill's airway, and the level of carbon dioxide in her blood was also consistent with death prior to the burn injuries.  However, it was also consistent with "an acute laryngospasm from flash burns (i.e., a flash fire caused the larynx to spasm so Jill was not able to take in any breaths)."  The doctor who performed the autopsy concluded the cause of death was extensive thermal burns, but noted in his report a possibility her death was caused by suffocation before the fire.

At trial, a doctor who supervised the autopsy testified that he mostly concurred with the findings, with two significant exceptions. First, although he agreed at the time of the autopsy that the subdural hemorrhages probably were caused by the fire, he now believed, based on scientific literature, that these injuries were caused by blunt force trauma significant enough to be associated with unconsciousness, but not significant enough to have caused death.  Second, he concluded Jill probably died by suffocation before the fire, though it was possible she was set on fire and died as a result of thermal burns.  He believed there was a high probability Jill was dead prior to the fire, but could not be entirely certain.

Fire department testing in 1991 revealed copious amounts of gasoline, an accelerant, on the t-shirt covering Jill. The vaginal and rectal swabs were not tested until 2012, when a full single-source-male DNA profile was obtained from the vaginal swab and a partial profile was obtained from the rectal swab. The profiles

were later compared to appellant's DNA profile; they matched exactly.

## II.  Charges and Conviction

In 2016, the People filed an information charging appellant—and only appellant—with the 1991 murder of victim Jill. (§ 187, subd. (a).)  The information further alleged two felony-murder special circumstance allegations under section 190.2, subdivision (a)(17): that appellant murdered Jill while engaged in the commission of rape (§ 261) and that he murdered Jill while engaged in the crime of sodomy (§ 286).

During appellant's jury trial, the People argued that appellant raped and sodomized Jill and either killed her during those crimes or intentionally killed her afterward.[3]  Appellant did not dispute that his sperm was found in Jill's vagina, but contended consensual sex occurred well before and independently of Jill's murder.

The trial court instructed the jury with CALCRIM No. 520, First or Second Degree Murder with Malice Aforethought.  As relevant here, that instruction defined the term "implied malice" using the phrase "natural and probable consequences."  The court also instructed the jury with CALCRIM No. 521, First Degree Murder, and CALCRIM No. 540A, Felony Murder: First Degree— Defendant Allegedly Committed Fatal Act.  The latter instruction set forth three elements the People had to prove to establish guilt under the felony murder theory: "1.  The defendant committed arson, rape or sodomy; 2.  The defendant intended to commit arson, rape or sodomy; and 3.  While committing arson, rape or

---

[3]  We granted appellant's request for judicial notice of the record from his direct appeal, No. B288876.

sodomy, the defendant caused the death of another person." The trial court did not instruct the jury on any aiding and abetting principles.

The jury found appellant guilty of first degree murder. It also found true "the allegation that the murder of JILL S. was committed by defendant, AHJEEB BOYD, while said defendant was engaged in the commission of the crime of rape in violation of Penal Code section 261, within the meaning of Penal Code section 190.2(a)(17)." The jury found the sodomy felony-murder allegation false. The trial court sentenced appellant to a term of life imprisonment without the possibility of parole.

## III. Direct Appeal

On direct appeal, appellant challenged his conviction on three grounds: "(1) there was insufficient evidence to support the murder conviction; (2) the jury was improperly instructed that he could be convicted of first degree murder on a natural and probable consequences theory; and (3) the jury was given erroneous instructions on unanimity." (*People v. Boyd* (Oct. 7, 2019, B288876) [nonpub. opn.].) A different panel of this court rejected all three contentions and affirmed appellant's conviction.

As most relevant here, the appellate court specifically rejected appellant's contention that the trial court erred by instructing the jury that he could be convicted under the natural and probable consequences theory because Senate Bill 1437 abrogated that theory of murder liability. It held that the then-recent "changes brought by [Senate Bill] 1437 have no application here," because that bill "was not intended to change the law of murder as it applied to the actual killer," and "defendant was tried as the actual killer of Jill." (*People v. Boyd* (Oct. 7, 2019,

5

B288876) [nonpub. opn.].) The Supreme Court denied appellant's petition for review.

## IV.   Petition for Resentencing

On October 7, 2022, appellant filed a form petition for resentencing under section 1172.6, checking the box stating he could no longer be convicted of murder due to changes made by Senate Bill 1437. On November 15, 2022, the trial court appointed counsel for appellant and directed the People to respond to his petition.

On January 13, 2023, the People filed an opposition to the petition. The People contended appellant was ineligible for relief as a matter of law because he was tried solely—and therefore must have been convicted— under the theory that he was the actual killer. The People attached the jury instructions given in appellant's case as an exhibit. The People also attached the opinion resolving appellant's direct appeal, but did not cite to or even mention it in the opposition.

Appellant, through counsel, filed a reply in support of the petition on June 23, 2023. After briefly summarizing the facts from the appellate opinion, appellant argued that he satisfied his prima facie burden because his jury "was instructed on natural and probable consequences of implied malice on the first-degree felony murder," i.e., CALCRIM No. 520. Appellant quoted and attached two excerpts of the People's closing argument in support of this contention. He further asserted, "One may speculate that the jury may have had doubts whether there was proof beyond a reasonable doubt that the perpetrator of the rape and the murder were the same person; perhaps there was one rapist and another arsonist. Speculation, but at this stage it is unknowable from the record of conviction to what extent the jury considered the

6

natural and probable consequences instruction and People's argument in its deliberations and verdict." Relying on *People v. Flores* (2022) 76 Cal.App.5th 974 (*Flores*), disapproved in part by *Patton*, *supra*,17 Cal.5th 549, and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), appellant also argued that he met his prima facie burden notwithstanding the People's assertion that he was the actual killer.

The trial court heard the petition on September 21, 2023. Both sides submitted on their written briefs. After reviewing the legal framework governing section 1172.6 petitions, emphasizing that "the court may not engage in any fact-finding but is entitled to rely on the record of conviction," the trial court examined the record of conviction. It noted first that "no other individual was charged in the information with the commission of the offenses." The court next observed that the jury expressly "found that the murder was committed by petitioner while he was engaged in the crime of rape."

The court then turned to the jury instructions, noting that it viewed as "significant" that the jury was instructed with CALCRIM Nos. 520, 521, 540A, 548, and 730 but was not instructed "on aiding and abetting nor on accomplice liability." The court stated that "[a]lthough CALCRIM No. 520 references natural and probable consequences, the presence of this term in the subject instruction should not infer that a natural and probable consequences theory was utilized by the People under the 1172.6 concept." It continued, "[t]he jury was clearly instructed on felony murder, but this alone does not necessitate resentencing nor does it imply that petitioner has proved a prima facie case because SB 1437 and Penal Code 1172.6 do not provide a vehicle for resentencing the actual perpetrator of the offense. …

7

Even if the jury opted for felony murder, there's no indication in the record of conviction that petitioner was not the actual killer." It added, "in the court's judgment, there's no indication that the People argued anything other than the defendant being the actual killer."

The trial court then addressed appellant's arguments. First, it reiterated that CALCRIM No. 520 "does not import into the crime of murder, the case law relating to the distinct natural and probable consequences doctrine developed in the context of aiding and abetting." The court next acknowledged that "[t]he People did argue, briefly, a concept of implied malice," but reiterated that "there was no aiding and abetting instruction that was given to the jury," and without such instruction the jury could not have imputed malice to appellant. The court noted that any "hesitation" about that argument "is overly contrary to the totality of circumstances in the case." The court distinguished *Flores* on the ground that it concerned preliminary hearing testimony in the context of a plea, and *Langi* on the ground that neither instruction at issue there, including the CALJIC instruction on aiding and abetting, was given in this case.

In light of the above, the court concluded that appellant "has not established a prima facie case for relief." It accordingly denied the petition.

Appellant timely appealed.

## DISCUSSION

### I.     Contentions

On appeal, appellant abandons the arguments he made below in favor of the new contention that the felony-murder instruction allowed the jury to convict him of first degree murder without deciding he was the actual killer. He asserts that

8

"nothing in appellant's record of conviction dispositively establishes the identity of the actual killer, a factual issue the resolution of which would require an evidentiary hearing at which both parties have the opportunity to present new or additional evidence on that or any other material issue." Accordingly, he contends, the trial court "contraven[ed] the clear wording and intent of the statute and violat[ed] appellant's state and federal constitutional rights to due process" by denying his petition.

Respondent notably does not challenge appellant's change of argument between the trial court and this court. It instead asserts that appellant's argument is foreclosed by the doctrine of collateral estoppel, because the appellate opinion stated that the "changes by SB 1437 have no application here" and appellant "was tried as the actual killer of Jill." Respondent alternatively argues that the trial court correctly determined that the record of conviction shows appellant was the actual killer.

After briefing was completed, the Supreme Court issued its opinion in *Patton, supra*, 17 Cal.5th 549. We invited the parties to submit supplemental letter briefs addressing *Patton* and its applicability to this appeal. Respondent filed a brief arguing that *Patton* is distinguishable because a jury found that appellant was the actual killer under a still-valid theory. Alternatively, it contends that "[t]o the extent any comparison can be made with *Patton*, appellant *at best* made only conclusory allegations of entitlement to section 1172.6 relief, which the *Patton* Court found were insufficient for relief," and urges us to deny any request for remand. In his subsequently filed brief, appellant contends *Patton* is inapplicable because it involved a plea and the record of conviction appeared to demonstrate that Patton was the actual

9

perpetrator of the attempted murder to which he pled. He alternatively contends that if we find *Patton* applicable, the appropriate disposition would be that ordered in *Patton*: a remand to permit him to file an amended petition, should he seek to do so.

## II. Legal Principles

Under the felony-murder rule as it existed at the time of appellant's trial, a defendant could be found guilty of murder despite lacking express or implied malice, if a victim died during the course of an inherently dangerous felony and the defendant intended to commit the underlying felony. (*People v. Wilson* (2023) 14 Cal.5th 839, 868.) "The law changed effective January 1, 2019, however, when the Legislature enacted Senate Bill 1437. With the goal of 'more equitably sentenc[ing] offenders in accordance with their involvement in homicides' [citation], Senate Bill 1437 significantly changed the scope of murder liability for defendants who did not actually kill or intend to kill anyone, including those prosecuted on a felony-murder theory [citation]." (*Ibid.*) After the enactment of Senate Bill 1437, section 189 now limits felony-murder liability to (1) the actual killer; (2) anyone who, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; and (3) anyone who "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subds. (e)(1), (2), (3).)

"Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief." (*People v. Wilson*, *supra*, 14 Cal.5th at p. 869.) That provision, currently codified at section 1172.6, requires

10

petitioners to "first, file a facially valid petition that states the statutory requirements for relief (*id.*, subd. (b)), and, second, make a 'prima facie showing' (*id.*, subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law." (*Patton*, *supra*,17 Cal.5th at p. 556.)

The initial inquiry, concerning the facial validity of the petition, is one of "minimal compliance." (*Patton*, *supra*,17 Cal.5th at p. 562.) The prima facie inquiry at issue here is also limited. (*Ibid.*, citing *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) However, the Supreme Court recently clarified in *Patton* that it is not "simply duplicative of the facial inquiry." (*Patton*, *supra*, at p. 562.) Instead, it is "'analogous' to the prima facie inquiry in habeas corpus proceedings." (*Ibid.*) The trial court generally must accept a petitioner's factual allegations as true and may only reject them on credibility grounds if the record, including the court's own documents, contains facts refuting the allegations. (*Ibid.*) "Conclusory allegations, such as the checkbox ones offered here, are particularly subject to refutation by the record of conviction." (*Id.* at p. 564.) The Supreme Court did not limit these pronouncements to situations in which a petitioner pled to a crime; we accordingly conclude the standards articulated in *Patton* are applicable here.

The record of conviction includes "the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion." (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 864; see § 1172.6, subd. (d)(3) [allowing the court to consider at the subsequent evidentiary hearing stage only the "procedural history of the case recited in any prior appellate opinion"].) It

also includes express jury findings, which generally are given preclusive effect (*People v. Curiel* (2023) 15 Cal.5th 433, 441, 460), and closing arguments counsel made during the petitioner's trial (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13 (*Lopez*)). The record of conviction "will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* 11 Cal.5th at p. 971.) However, a petitioner's allegation that he or she is eligible for relief "is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel, supra,* 15 Cal.5th at p. 463.)

A "petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton, supra,* 17 Cal.5th at p. 564.) Thus, although the "'prima facie bar was intentionally and correctly set very low'" (*Lewis, supra,* 11 Cal.5th at p. 972), it is not on the floor. A petitioner "confronting a record of conviction that demonstrates relief is unavailable ha[s] the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Patton, supra,* at p.567.) A petitioner may satisfy this burden by, for instance, pointing to "specific facts that identify someone else as the direct perpetrator." (*Ibid.*) "But absent specific facts, no such dispute arises, . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Ibid.*)

We review de novo the trial court's determination whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**III. Analysis**

We first address, briefly, respondent's contention that collateral estoppel precludes appellant's current argument. Collateral estoppel, also known as issue preclusion, prevents the relitigation of issues that have already been decided. (*Curiel, supra*, 15 Cal.5th at p. 451.) It simultaneously protects litigants from the burden of relitigating the same issue and promotes judicial economy. (*Ibid.*) For collateral estoppel to apply, several threshold requirements must be satisfied. "'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.'" (*Id.* at pp. 451-452.) The party seeking to apply the doctrine bears the burden of establishing these requirements. (*Id.* at p. 452.)

Here, respondent contends appellant cannot relitigate whether he was the actual killer, because that was already decided on direct appeal. Appellant replies that respondent misreads the opinion, which "never states that appellant was 'found guilty as the actual killer.'" We decline to resolve this issue for two reasons. First, as a general rule, collateral estoppel is forfeited if not raised in the trial court. (*People v. Harden, supra*, 81 Cal.App.5th at p. 52.) The People argued below that

13

appellant was the actual killer, but did not invoke the doctrine of collateral estoppel. Second, even if we were inclined to exercise our discretion to excuse the forfeiture, which we are not (see *In re Sheena K.* (2007) 40 Cal.4th 875, 887 fn. 7), there is no need to reach the issue because appellant's argument, which we exercise our discretion to address, fails on the merits.

For purposes of the felony-murder doctrine, "actual killer" means "someone who 'personally killed' the victim." (*People v. Vang* (2022) 82 Cal.App.5th 65, 89-90.) An actual killer is the direct, and not merely the proximate, cause of a victim's death. (*Id.* at p. 90.) As the trial court found, the record of conviction demonstrates that appellant was tried and convicted as the actual killer of Jill and therefore can still be guilty of murder under the felony-murder doctrine. (See § 189, subd. (e)(1).)

Appellant was the only person the information charged with the crime, and he was the only one tried. Although the People argued alternative theories of murder, all were predicated on appellant being the sole, actual killer. "The jury was not instructed on accomplice liability, aider and abettor liability, or liability under the theory defendant counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree or [rape]. The jury was not instructed on liability by virtue of defendant having been a major participant in the underlying felony." (*Lopez*, *supra*, 78 Cal.App.5th at p. 15.) The jury expressly found that "the murder of JILL S. was committed by defendant, AHJEEB BOYD, while said defendant was engaged in the commission of the crime of rape. . . ."

Appellant asserts the record nevertheless does not foreclose the possibility he was not the actual killer. He contends the case

14

is "substantially identical" to *Lopez*, *supra*, 78 Cal.App.5th 1, in which the court found the petitioner satisfied his prima facie burden notwithstanding a lack of instructions on accomplice or aider and abettor liability and a true finding on a robbery-murder special circumstance.

Appellant is correct that his jury and the jury in *Lopez* received similar instructions, specifically CALCRIM Nos. 540A, 730, and an instruction, presumably CALCRIM No. 520, that "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (*Lopez*, *supra*, 78 Cal.App.5th at p. 16; see *id.* at p. 17 [noting jury received CALCRIM No. 520].) The *Lopez* court reasoned, "The jury instructions created the possibility the jury convicted defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer. The jury was not instructed it had to find defendant personally killed the victim to convict him; the jury was instructed it only had to find defendant committed an act that caused the victim's death. The jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation. As defendant posits, 'the jury could have taken a realistic view of the prosecution's circumstantial evidence and determined beyond a reasonable doubt that [defendant] was involved in the robbery that resulted in the death, but that [defendant] may or may not have been the actual killer.'" (*Id.* at p. 20.)

15

We find *Lopez* distinguishable in two crucial and related respects. First, the underlying felonies and evidence in support of them differ. In *Lopez*, a home invasion robbery was at issue; here, the underlying crime was a rape. Although the defendant in *Lopez* was prosecuted on the theory that he acted alone, the record contained evidence—the defendant's testimony—that another person was at the scene and committed the robbery and murder while defendant was in another room. (See *Lopez*, *supra*, 78 Cal.App.5th at pp. 9, 19.) Here, defense counsel did not dispute that, "[b]ased on the presence of sperm, one must reasonably conclude that Mr. Boyd and [Jill] engaged in some sort of sex." The jury found that sex to be rape, and further found that appellant murdered Jill while engaged in the rape, rejecting his argument that she was killed at some later point in time.

Second, *Lopez* pre-dates *Patton*, which clarified that a section 1172.6 petitioner cannot satisfy his or her burden at the prima facie stage with conclusory allegations when confronted with a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory. (*Patton*, *supra*, 17 Cal.5th at p. 567.) A petitioner may point to "specific facts that identify someone else as the direct perpetrator," but cannot simply hypothesize the existence of another perpetrator; "absent specific facts, no such dispute arises" to warrant an evidentiary hearing. (*Ibid*.)

In response to the People's showing in the trial court, appellant invited the court to speculate that there was a second perpetrator. Here, he relies exclusively on the felony-murder instruction without pointing to anything in the judicially noticed record of conviction even remotely suggesting he was not the actual killer. While a similar showing was sufficient in *Lopez*,

16

the court there discussed at length the underlying facts and evidence in the record of conviction from which the jury theoretically could have found the defendant guilty on a now-impermissible theory. (See *Lopez*, *supra*, 78 Cal.App.5th at pp. 19-20.) Appellant has not endeavored to direct this court to anything similar. In light of the jury's findings and remainder of the record in this case, we are not persuaded he has carried his prima facie burden under *Patton*.

However, as noted above, appellant requested in his supplemental brief that the matter be remanded to give him an opportunity to file an amended petition pleading additional facts to comply with *Patton*. As he correctly observes, such a request was granted in *Patton*, "out of an abundance of caution." (*Patton*, *supra*, 17 Cal.5th at p. 569.) We grant the request and order the matter remanded to the trial court with directions to consider an amended petition should appellant, within 30 days of that remand, seek to file one. "We express no opinion on the viability of any additional facts [appellant] might allege." (*Ibid.*)

17

## DISPOSITION

We remand this matter to the trial court with directions to consider an amended petition should appellant, within 30 days of that remand, seek to file one.  We otherwise affirm the judgment of the trial court.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



ZUKIN, ACTING P. J.



DAUM, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.